**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SPIRIT BANK CORP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11-CV-81-TCK-FHM** |
| | ) | |
| **WARNER AVIATION, LTD.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Exclude Proposed Experts' Testimony and Experts'

Reports (Doc. 44) ("Motion to Exclude"); Defendant StarNet Insurance Co.'s ("StarNet") Opposed

Motion for an Extension of Time (Doc. 48) ("Motion for Extension"); and Plaintiff's Motion to

Amend Complaint (Doc. 52).

**I.     Background**

Plaintiff's Petition alleges the following facts.  On or about March 14, 2005, Plaintiff issued

a  purchase money loan to Defendant Warner Aviation for the purchase of a 2003 Piper Meridian

aircraft ("Piper aircraft"). As part of the transaction, Defendant Allen Warner ("Warner"), as

President of Warner Aviation, executed a Commercial Promissory Note in the amount of

$1,490,461.21, payable to Plaintiff.  Warner also executed a Commercial Security Agreement,

whereby he granted Plaintiff a security interest in the Piper aircraft, and a Aircraft Security

Agreement Addendum, which granted Plaintiff a security interest in additional property owned by

Warner Aviation, including Piper aircraft's log books, equipment, and parts.[1]   The Commercial

---

[1]  The Piper aircraft, log books, and related equipment and parts will hereinafter be
referred to as the "Collateral."

Security Agreement additionally provided that Warner Aviation would keep the Collateral insured, in good repair, and inform Plaintiff or any loss or damage to the Collateral. Plaintiff alleges that none of the Warner Defendants – namely, Warner, Warner Aviation, and Warner Industries, Inc. – paid the Commercial Promissory Note according to its terms, making these Defendants in default. Plaintiff therefore repossessed the Collateral on or about November 23, 2009.

During the term of the loan, the Warner Defendants secured multiple insurance policies covering the Piper aircraft from Federal Insurance Company ("Federal") ("Federal Policy") and U.S. Speciality Insurance Company ("USSIC") ("USSIC Policy"). Plaintiff also procured an insurance policy covering the Piper aircraft from Defendant StarNet ("StarNet Policy"). After Plaintiff repossessed the Piper aircraft, the aircraft was flown to Hutchinson, Kansas for an annual inspection. During said inspection, it was discovered that a "wrinkling" appeared on the skins of both wings of the Piper aircraft. Plaintiff alleges that this "wrinkling" constitutes physical damage and that it occurred during the term of coverage of the Federal Policy, the USSIC Policy, and/or the StarNet Policy. Plaintiff then gave notice and proof of loss to Federal, USSIC, and StarNet, but alleges that all three insurance companies have failed to acknowledge coverage for the physical damage to the Piper aircraft and pay for said damage.

Plaintiff thereafter brought suit against the Warner Defendants, Federal, USSIC, and StarNet, asserting the following claims: (1) Action on Note against the Warner Defendants; (2) Breach of Contract against the Warner Defendants; (3) Breach of Contract against Federal, USSIC, and StarNet; and (4) Declaratory Judgment against Federal, USSIC, and StarNet. Subsequent to initiating this lawsuit, Plaintiff voluntarily dismissed all claims against Federal and USSIC. (*See* Doc. 36.) On April 19, 2011, the Court entered a Scheduling Order, setting the following

relevant deadlines: (1) May 17, 2011 – Motions to Join or Amend; (2) September 26, 2011 – Defendants' Expert Identification and Reports; (3) September 30, 2011 – Discovery Deadline; (4) October 14, 2011 – Dispositive Motions and *Daubert* Motions; (5) November 25, 2011; Motions in Limine; (6) February 21, 2012 – Trial. (*See* Doc. 35.)

Although StarNet issued a document entitled "Expert Witness Disclosures" to Plaintiff on September 26, 2011, notably missing from the disclosures were the experts' reports and a complete list of the experts' publications and cases. As a result of this failure, Plaintiff filed its Motion to Exclude on October 3, 2003, on the grounds that StarNet failed to provide its expert reports as required by Federal Rule of Civil Procedure 26(a)(2) ("Rule 26"). StarNet filed its response to the Motion to Exclude on October 24, 2011, arguing that its failure to "comply with all of the requirements of [Rule 26] was harmless and any prejudice [could] be readily cured without disruption to trial." (Resp. to Mot. to Exclude 2.) Also on October 24, 2011, StarNet filed its Motion for Extension, wherein StarNet requested that the Court: (1) grant an extension of time for StarNet to exchange its experts' reports with Plaintiff; and (2) extend all other deadlines up to the date of the Pretrial Order, including deadlines for dispositive motions and *Daubert* motions, motions in limine, deposition designations, videotape/interrogatory designations, counter-designations, pretrial disclosures, and transcripts annotated with objections. Further, although StarNet did not explicitly request extension of the September 30, 2011 discovery deadline, its motion implicitly requested such an extension, as StarNet stated it would be amenable to depositions of its experts after the reports are exchanged. Finally, Plaintiff moved to amend its Complaint on November 7, 2011 – months after the May 17, 2011 deadline for Motions to Join or Amend – in order to assert

a claim for breach of the duty to deal fairly and in good faith against StarNet. Said motion is

opposed by StarNet. The Court will treat each of these motions in turn.

## II.     Motion for Extension

StarNet moves for an extension of deadlines in the Scheduling Order. Generally, when a

party moves for an extension after the expiration of the relevant deadline, a court may extend the

time if the party failed to act because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B) ("Rule

6"); *see Sowell v. United Container Mach., Inc.*, No. 02-2004-JWL, 2002 WL 31466439, at \*2 (D.

Kan. Nov. 1, 2002) (applying Rule 6 to request to file expert report out of time).[2]   "'Excusable

neglect' is an 'elastic concept' and the [C]ourt considers 'all relevant circumstances surrounding the

party's omission.'" *Sowell*, 2002 WL 31466439, at \*2 (citing *Pioneer Inv. Servs. Co. v. Brunswick*

*Assoc. Ltd. P'ship*, 507 U.S. 380, 394-95 (1993)). "The Tenth Circuit has held that a finding of

excusable neglect requires (i) a demonstration of good faith by the party seeking an extension, and

(ii) a reasonable explanation as to why the party did not comply with the court-ordered deadline."

*Southwest Stainless, L.P. v. Sappington,* No. 07-CV–334-CVE-FHM, 2008 WL 1777476, at \*6

(N.D. Okla. April 17, 2008) (citing *In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1290 (10th

Cir. 1974)).

In this case, StarNet argues that it did not retain its experts until August 2011 and that the

experts could not finish their reports by the Court's deadline because of the timing of certain

depositions. The Court finds that this explanation does not rise to the level of excusable neglect

---

[2] StarNet's Motion for Extension is made pursuant to Rule 6, and the Court therefore
applies Rule 6's "excusable neglect" standard. The Court notes that it previously applied Rule
16 to a similar motion when that motion was made pursuant to Rule 16 as opposed to Rule 6.
*See Fairchild v. Peak Med. Corp.*, No. 09-CV-296-TCK-FHM, 2010 WL 845974, at \*1-2 (N.D.
Okla. March 5, 2010).

under Rule 6, as StarNet fails to explain (1) why the depositions could not have been scheduled earlier so that the deadline could be met and (2) why the depositions were necessary for the completion of the reports. StarNet additionally fails to address why it did not timely move for an extension of the expert report deadline. Once StarNet became aware that its experts were not going to have their reports completed by the September 26 deadline, as likely occurred well before said deadline, it was incumbent on StarNet to timely seek an enlargement of time. StarNet instead let the deadline come and go without requesting any extension from the Court. As this Court has previously stated, "[each party] is responsible for ensuring that [its] expert complies with court deadlines, or, at a minimum, moving the Court for relief in a timely manner." *Fairchild*, 2010 WL 845974, at *2; *see Sappington*, 2008 WL 1777476, at *6 (denying relief under Rule 6 when plaintiffs failed to timely seek extension of deadline and additionally failed to reasonably explain why they did not comply with the scheduling order); *Potter v. Health Care Auth.*, No. 03-1326, 2006 WL 580986, at *5 (D. Kan. March 8, 2006) ("It is a party's responsibility to keep their expert apprised of the pending expert deadline. If and when it became apparent to Plaintiff's counsel that [the expert] would not be able to meet the Court-mandated deadline, Plaintiff's counsel had a duty to move the Court for additional time."). Based on these facts, the Court denies StarNet's Motion for Extension.

III.    **Motion to Exclude**

Federal Rule of Civil Procedure 26(a)(1) ("Rule 26") provides as follows:

(A)    In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B)    Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure *must be accompanied by a written*

*report* – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(A),(B) (emphasis added). In this case, StarNet did not meet its Rule 26 obligations by the deadline in the Scheduling Order, as it failed to produce the expert reports, supporting exhibits, and a complete list of the experts' publications and cases by September 26, 2011. Further, there is no indication in the parties' briefing that these items have been produced to date. For the reasons explained above, the Court declines to extend such deadline.

As a sanction for StarNet's failure to comply with Rule 26, Plaintiff moves to exclude StarNet's experts pursuant to Federal Rule of Civil Procedure 37(c)(1) ("Rule 37"). Rule 37 provides as follows:

(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, *unless the failure was substantially justified or harmless*.

6

Fed. R. Civ. P. 37(c)(1) (emphasis added).  Thus, Rule 37 "permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002).  Although the district court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a Rule 26 violation," the court should consider the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Id.* at 953.  "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  *Id.*

Applying these factors, the Court finds that the exclusion of StarNet's experts is warranted because the first three factors weigh in favor of exclusion.  Specifically, Plaintiff has been prejudiced by StarNet's failure to meet the expert report deadline, as Plaintiff faced a discovery deadline, a dispositive motion deadline, a *Daubert* motion deadline, and a motion in limine deadline without benefit of StarNet's expert reports.  Allowing StarNet's experts to testify at trial and/or considering their reports for summary judgment purposes is prejudicial because Plaintiff no longer has the opportunity to depose these experts or refute their reports in any meaningful way.  Second, although this prejudice could be cured by extending the deadlines, the Court has found that StarNet has not satisfied its burden for doing so.  Third, were the Court to extend the deadlines to cure prejudice, the trial schedule would be disrupted.  Extending the expert report deadline would require the Court to re-open discovery, reset the dispositive motion and *Daubert* deadlines, and move the trial date

so that the Court would have ample time to consider said motions before the pre-trial conference. Based on these factors, the Court grants Plaintiff's Motion to Exclude.

## IV.      Motion to Amend Complaint

Plaintiff moves to amend its Complaint in order to assert a claim for breach of duty to deal fairly and act in good faith against StarNet. Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), a motion to amend may be denied based on undue delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). The Tenth Circuit "focuses primarily on the reasons for the delay" in determining whether it is "undue." *Id.* Specifically, the Tenth Circuit has held that "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay,'" *id.* (citing *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)), or where "the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend," *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).

In this case,  Plaintiff argues that it's proposed cause of action is based on StarNet's "failure to conduct a reasonable investigation of [Plaintiff's] claim." (Mot. to Amend 3.) Plaintiff argues that it just became aware of the failure to investigate in StarNet's recent discovery responses and summary judgment briefing. However, the Court finds this explanation  unavailing. First, the details of Plaintiff's argument provide a tenuous link between (1) the recent discovery responses and summary judgment briefing and (2) facts underlying a cause of action based on StarNet's failure to investigate Plaintiff's claim. Specifically, in arguing that it just became aware of the alleged failure to investigate, Plaintiff cites to portions of StarNet's discovery responses and summary judgment briefing wherein StarNet asserts specific exclusions in the relevant insurance policy as the basis for

8

the alleged denial of Plaintiff's claim. How these asserted exclusions relate to StarNet's failure to investigate Plaintiff's claim is unclear, however. The Court simply fails to see how StarNet's recent responses and briefing resulted in Plaintiff's sudden realization that StarNet allegedly did not properly investigate its claim.

Further, and perhaps more telling, is the fact that other portions of Plaintiff's motion illustrate Plaintiff's prior knowledge of the alleged lack of an investigation. For example, Plaintiff states that despite repeated requests in *2010*, "StarNet never informed [Plaintiff] of the results of any investigation StarNet conducted, and correspondingly never informed [Plaintiff] of any reason(s) developed through its investigation for StarNet's refusal to acknowledge coverage." (*Id.* 4-5.) Plaintiff then outlines and attaches correspondence between it and StarNet from April 2010 to August 2010 and contends that such correspondence "shows that the *most* StarNet might have done [to investigate the claim] was to adopt what one of the *other* carriers opined as the apparent basis for StarNet's refusal to extend coverage." (*Id.* at 5.) Plaintiff further argues that "[t]he most that can be discerned from [the correspondence between April 2010 and August 2010] is that StarNet gathered some information, provided by [Plaintiff] on request but never did anything with it, *and did not conduct any 'reasonable investigation' into [Plaintiff's] claim for coverage.*" (*Id.* at 7 (emphasis altered).) Because Plaintiff's briefing cites the 2010 correspondence as demonstrating StarNet's failure to investigate its claim, it seems that Plaintiff was aware of the alleged failure to investigate "some time prior to the filing of the motion to amend." *Gates Learjet Corp.*, 823 F.2d at 387. The Court therefore denies Plaintiff's Motion to Amend on the grounds of undue delay. *See Compton v. Rent-A-Center, Inc.*, No. 08-6264, 2009 WL 3353094, at *4 (10th Cir. Oct. 20, 2009) (finding undue delay when plaintiff was "aware of the facts forming the basis of [the new claim he

wanted to assert] prior to filing his original complaint"); *McKnight v. Kimberly Clark Corp.*, 149

F.3d 1125, 1130 (10th Cir. 1998) (affirming order denying leave to amend when plaintiff was aware

of information on which proposed amended complaint was based prior to filing the original

complaint).

## V.      Conclusion

For the reasons outlined herein, Plaintiff's Motion to Exclude Proposed Experts' Testimony

and Experts' Reports (Doc. 44) is GRANTED; StarNet's Opposed Motion for an Extension of Time

(Doc. 48) is DENIED; and Plaintiff's Motion to Amend Complaint (Doc. 52) is DENIED.


**DATED this 21st day of December, 2011.**


**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**